**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **KAREN BALLARD** and **REBECCA MCKINNEY**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**PRECIPIO, INC.**<br><br>Defendant. | Case No. 3:26-cv-00656-VDO |

# CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Karen Ballard and Rebecca McKinney (collectively, "Plaintiffs"), individually and on behalf of all similarly situated persons (the "Class" or "Class Members" (as further defined below)), allege the following against Defendant Precipio, Inc. ("Precipio" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiffs' counsel and review of public documents as to all other matters:

## I. INTRODUCTION

1. Plaintiffs bring this class action lawsuit against Precipio for its failure to properly secure and safeguard Plaintiffs' and Class Members' personally identifiable information ("PII") and protected health information ("PHI") from criminal hackers, resulting in a massive and preventable data breach.[1]

2. Precipio, based in New Haven, Connecticut, is a hematopathology diagnostics

[1] *See* PRECIPIO, *Notice of Data Event*, https://www.precipiodx.com/wp-content/uploads/2026/04/Notice-of-Data-breach.pdf (last visited Aug. 5, 2026).

laboratory that serves hundreds of patients in multiple states.[2]

3. On or about January 23, 2026, Precipio reported a "Hacking/IT Incident" involving a "Network Server" to the United States Department of Health and Human Services ("HHS").[3] Under federal law, organizations must report breaches of unsecured PHI no later than 60 calendar days from the discovery of the breach.

4. According to a Notice of Data Event posted to Precipio's website, on an undisclosed date, Precipio became aware of suspicious activity related to a Precipio cloud-based storage account.[4] Precipio initiated an investigation to confirm the full nature and scope of the activity.[5] The investigation determined there was unauthorized access to the cloud-based storage account on or around November 23, 2025, and that certain files within the account were copied without authorization (the "Data Breach" or "Breach").[6]

5. Based on Defendant's investigation, the following types of PII and PHI were stolen in the Breach—names, addresses, medical record numbers, dates of birth, Social Security numbers, clinical or treatment information, medical procedure information, medical provider names, contact information, facial images, prescription information, driver's or other government ID numbers, and/or health insurance information (collectively, "Private Information").

6. On or about April 23, 2026—months after the Data Breach occurred—Defendant finally mailed individual notice of data breach letters ("Notice Letters") to the victims of the Data

---

[2] PRECIPIO, https://www.precipiodx.com/ (last visited Aug. 5, 2026).
[3] *See* UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE FOR CIVIL RIGHTS, *Breach Portal: Notice to the Secretary of HHS Breach of Unsecured Protected Health Information*, *HIPAA Cases Currently Under Investigation*, *Precipio, Inc.*, https://ocrportal.hhs.gov/ocr/breach/breach_report_hip.jsf (last visited Aug. 5, 2026).
[4] PRECIPIO, *Notice of Data Event*, https://www.precipiodx.com/wp-content/uploads/2026/04/Notice-of-Data-breach.pdf (last visited Aug. 5, 2026).
[5] *Id.*
[6] *Id.*

Breach. As a result of this delayed response, Plaintiffs and Class Members had no idea—for months—that their Private Information had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. This risk will remain for their respective lifetimes.

7. To make matters worse, on or around December 2, 2025, online sources reported that the notorious criminal ransomware group—INC RANSOM—claimed responsibility for the Data Breach on the dark web.[7] The group reportedly claimed to have exfiltrated 150 gigabytes of data from Defendant's systems.[8]

8. A screenshot of INC RANSOM's dark web post is pictured below:[9]

[IMAGE ON FOLLOWING PAGE]

---

[7] DeXpose (Dec. 2, 2025), *Incransom Targets Precipio Diagnostics in Ransomware Attack*, https://www.dexpose.io/incransom-targets-precipio-diagnostics-in-ransomware-attack/ (last visited Aug. 5, 2026); BeyondMachines (Feb. 4, 2026), *Precipio, Inc. Data Breach Exposes 150 GB of Patient Data Following INC Ransom Attack*, https://beyondmachines.net/event_details/precipio-inc-data-breach-exposes-150-gb-of-patient-data-following-inc-ransom-attack-j-s-c-x-l (last visited Aug. 5, 2026); Sean Doyle, *Precipio Data Breach Exposes 150 GB of Diagnostic Laboratory Records*, Botcrawl (Dec. 2, 2025), https://botcrawl.com/precipio-data-breach/ (last visited Aug. 5, 2026).

[8] DeXpose (Dec. 2, 2025), *Incransom Targets Precipio Diagnostics in Ransomware Attack*, https://www.dexpose.io/incransom-targets-precipio-diagnostics-in-ransomware-attack/ (last visited Aug. 5, 2026).

[9] RansomLook, https://www.ransomlook.io/group/inc%20ransom (last visited Aug. 5, 2026) (sample of documents redacted in red).




9. The fact that INC RANSOM is behind the Data Breach is extremely concerning for the safety Plaintiffs' and Class Members' Private Information. INC RANSOM is a "financially motivated" ransomware group.[10] "The group employs double extortion tactics (stealing sensitive data before encrypting systems) to maximize pressure on victims."[11] If the ransom demand is not paid, they will release the stolen data on the dark web.[12]

10. Upon information and belief, Plaintiffs and Class Members is publicly available on the dark web because that is the *modus operandi* of cybercriminals who perpetrate data breaches such as this—including INC RANSOM.

11. The Private Information compromised in the Data Breach contained highly sensitive PII and PHI, representing a gold mine for data thieves. Armed with the Private

[10] Laura Pompeu, *INC Ransomware: Tactics, Evolution, and Incident Response Guide*, PROVEN DATA (Jan. 26, 2026), https://www.provendata.com/blog/inc-ransomware (last visited Aug. 5, 2026).
[11] *Id.*
[12] *See* MEDIUM (Nov. 28, 2025), *INC Ransomware: Malware Overview* https://medium.com/@anyrun/inc-ransomware-malware-overview-b56acd0268cb (last visited Aug. 5, 2026).

Information accessed and acquired in the Data Breach (and a significant head start), data thieves can commit a variety of crimes including: (i) opening new financial accounts in Class Members' names; (ii) taking out loans in Class Members' names; (iii) using Class Members' names to obtain medical services; (iv) using Class Members' information to obtain government benefits; (v) filing fraudulent tax returns using Class Members' information; (vi) obtaining driver's licenses in Class Members' names but with another person's photograph; and (vii) giving false information to police during an arrest.

12. There has been no assurance offered by Defendant that all personal data or copies of data have been recovered or destroyed, or that Defendant has adequately enhanced its data security practices sufficient to avoid a similar breach of its network in the future.

13. Therefore, Plaintiffs and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of: (i) harm from identity theft and other fraudulent misuse of their Private Information; (ii) the loss of the benefit of their bargain; (iii) out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach; and (iv) the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

14. The potential for improper disclosure and theft of Plaintiffs' and Class Members' Private Information was a known risk to Precipio, and thus Precipio was on notice that failing to take necessary steps to secure Plaintiffs' and Class Members' Private Information left it vulnerable to a data breach.

15. The Data Breach makes it exceedingly apparent that Precipio failed to properly monitor and implement data security practices with regard to the computer network and systems that housed the Private Information. If Precipio had properly monitored its networks, it would have

discovered the Breach sooner.

16. Plaintiffs' and Class Members' identities are now at risk because of Precipio's negligent conduct. The Private Information that Precipio collected and maintained is now in the hands of data thieves and other unauthorized third parties.

## II. PARTIES

17. Plaintiff **Karen Ballard** is, and at all times mentioned herein was, an individual citizen of the State of Florida. Plaintiff Ballard received a Notice Letter from Defendant informing her that her Private Information was compromised in the Data Breach.

18. Plaintiff **Rebecca McKinney** is, and at all times mentioned herein was, an individual citizen of the State of Texas. Plaintiff McKinney received a Notice Letter from Defendant informing her that her Private Information was compromised in the Data Breach.

19. Defendant **Precipio** is a hematopathology diagnostics laboratory with its principal place of business at 4 Science Park, New Haven, Connecticut 06511.

## III. JURISDICTION AND VENUE

20. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Precipio. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

21. This Court has jurisdiction over Precipio because Precipio operates in and/or is incorporated in this District.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District and Precipio has

harmed Class Members residing in this District.

## IV. FACTUAL ALLEGATIONS

### A. PRECIPIO'S BUSINESS AND COLLECTION OF PLAINTIFFS' AND CLASS MEMBERS' PRIVATE INFORMATION.

23. Precipio is a hematopathology diagnostics laboratory.[13]

24. Precipio provides diagnostic products and services to oncological physicians, hospitals, and clinical laboratories, serving hundreds of patients in Connecticut and multiple states nationwide.[14]

25. Precipio is estimated to employ more than 60 people and generate approximately over $20 million in annual revenue.[15]

26. As a condition of receiving healthcare related services, Precipio requires that its patients entrust it with highly sensitive PII and PHI.

27. In the ordinary course of receiving services from Precipio, Plaintiffs and Class Members were required to provide their Private Information to Defendant.

28. Precipio was aware it had a duty to protect the Private Information in its possession. For example, in its Privacy Policy, Precipio states "[w]e know that privacy is important to you. Your privacy is important to us too."[16] Precipio also informs its patients that it "has adopted physical, technical and administrative measures that are designed to prevent unauthorized access

---

[13] PRECIPIO, *About Precipio*, https://www.precipiodx.com/about/ (last visited Aug. 5, 2026).
[14] *See* PRECIPIO, https://www.precipiodx.com/ (last visited Aug. 5, 2026).
[15] WALL STREET JOURNAL, *Markets*, *Precipio, Inc.*, https://www.wsj.com/market-data/quotes/PRPO/company-people?msockid=0e19d50ea13765253695c3a5a042644d (last visited Aug. 5, 2026).
[16] *See* PRECIPIO, *Privacy Policy*, https://www.precipiodx.com/privacy-policy/ (last visited Aug. 5, 2026).

or disclosure, maintain data accuracy, and ensure appropriate use of personal information."[17]

29. Due to the highly sensitive and personal nature of the PII and PHI Precipio acquires and stores, Precipio, upon information and belief, promises to, among other things: (i) keep patients' Private Information private; (ii) comply with industry standards related to data security and the maintenance of its patients' Private Information; (iii) inform its patients of its legal duties relating to data security and comply with all federal and state laws protecting patients' Private Information; (iv) only use and release patients' Private Information for reasons that relate to the services it provides; and (v) provide adequate notice to patients if their Private Information is disclosed without authorization.

30. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Precipio assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure and exfiltration.

31. Plaintiffs and Class Members relied on Precipio to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Information. Nevertheless, Defendant failed to implement adequate data security, culminating in a massive and preventable data breach.

## B. DEFENDANT'S MASSIVE AND PREVENTABLE DATA BREACH AND DEFENDANT'S INADEQUATE NOTICE.

32. Precipio experienced a massive and preventable data breach in or around November 2025.[18]

---

[17] *Id.*

[18] PRECIPIO, *Notice of Data Event*, https://www.precipiodx.com/wp-content/uploads/2026/04/Notice-of-Data-breach.pdf (last visited Aug. 5, 2026).

33. The Notice of Data Event Precipio posted to its website states in pertinent part as follows:

**Notice of Data Event**

Precipio, Inc. ("Precipio") is providing notice of an event that may involve some patient information.

**What Happened?** Precipio became aware of suspicious activity related to a Precipio cloud-based storage account and took steps to contain the activity and reset the account's password. We also initiated an investigation to confirm the full nature and scope of the activity. The investigation determined there was unauthorized access to the cloud-based storage account on or around November 23, 2025, and that certain files within the account were copied without authorization. We then undertook an extensive review of the files that may be affected to determine if any sensitive information was present and to whom it relates. This review was preliminarily completed on March 9, 2026 and we then worked to reconcile the data to our internal records and determine contact information for relevant individuals.

**What Information Was Involved?** Based on our investigation to date, we determined that the impacted information varies by individual but may include data such as name, address, medical record number, date of birth, Social Security number, clinical or treatment information, medical procedure information, medical provider name, contact information, facial image, prescription information, driver's or other government ID number, and/or health insurance information.

**What We Are Doing.** We take data privacy and security very seriously. Upon learning of this event, we moved quickly to investigate and respond to the incident, secure the impacted account, and undertake the processes needed to notify potentially affected individuals. Additionally, federal law enforcement was notified of the event. We recognize the evolving nature of cybersecurity and will continue to evaluate and enhance our technical safeguards in the future. For More Information. If you have additional questions, please call our dedicated assistance line at 1 833-289-4199 between the hours of 8:00 a.m. and 8:00 p.m. EST, Monday – Friday, excluding holidays. You may also write to us at 4 Science Park, New Haven, CT 06511.

**What You Can Do.** We encourage individuals who may be affected to remain vigilant against instances of identity theft and fraud by reviewing account statements and monitoring free credit reports for suspicious activity and to detect errors. Under U.S. law, a consumer is entitled to one free credit report annually from each of the three major credit reporting bureaus, Equifax, Experian, and TransUnion. To order a free credit report, visit www.annualcreditreport.com or call, toll-free, 1-877-322-8228. Consumers may also directly contact the three major credit reporting bureaus listed below to request a free copy of their credit

report.[19]

34. On or about April 23, 2026, roughly five (5) months after the Data Breach occurred, Precipio finally began sending Notice Letters to the victims of the Data Breach. However, omitted from the Notice Letters are crucial details like: (i) the root cause of the Data Breach; (ii) the vulnerabilities exploited; (iii) the involvement of INC RANSOM; and (iv) the remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained nor clarified to Plaintiffs and Class Members, who retain a vested interest in ensuring that their Private Information is protected.

35. Thus, Defendant's Notice Letters amount to no real disclosure at all, because they fail to inform Plaintiffs and Class Members of the Data Breach's critical facts with any degree of specificity. Without these details, Plaintiffs' and Class Members' ability to mitigate the harms resulting from the Data Breach was and is severely diminished.

36. The Notice Letters offer no substantive steps to help victims like Plaintiffs and Class Members to protect themselves other than providing one (1) year of credit monitoring—an offer that is woefully inadequate considering the lifelong increased risk of fraud and identity theft Plaintiffs and Class Members now face as a result of the Data Breach. Defendant's offer of credit monitoring only confirms Plaintiffs and Class Members are at an imminent risk of fraud and identity theft.

37. After the Breach, sources reported that INC RANSOM claimed responsibility for the Data Breach and reportedly exfiltrated 150 GB of data.[20] "Their operations involve data theft

---

[19] *Id.*

[20] *See, e.g.*, DEXPOSE (Dec. 2, 2025), *Incransom Targets Precipio Diagnostics in Ransomware Attack*, https://www.dexpose.io/incransom-targets-precipio-diagnostics-in-ransomware-attack/ (last visited Aug. 5, 2026); BEYONDMACHINES (Feb. 4, 2026), *Precipio, Inc. Data Breach Exposes*

and the threat of public release (double extortion), significantly increasing pressure on victims to comply with their demands. Their targets are carefully selected, focusing on entities with substantial financial resources and sensitive data."[21]

38. Upon information and belief, Plaintiffs' and Class Members' Private Information has or will be published on the dark web because that is the *modus operandi* of cybercriminals who perpetrate data breaches of this nature.

39. Even if Defendant did pay the ransom demand, that does not mean Plaintiffs' and Class Members' Private Information is safe. "Paying the ransom [] doesn't guarantee that the cybercriminals won't sell or use the stolen data for other illegal purposes."[22]

40. Precipio had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep Plaintiffs' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure. Yet, it utterly failed to do so.

41. Plaintiffs and Class Members provided their Private Information to Precipio with the reasonable expectation and mutual understanding that Precipio would comply with its obligations to keep their Private Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

---

*150 GB of Patient Data Following INC Ransom Attack*, https://beyondmachines.net/event_details/precipio-inc-data-breach-exposes-150-gb-of-patient-data-following-inc-ransom-attack-j-s-c-x-l (last visited Aug. 5, 2026); Sean Doyle, *Precipio Data Breach Exposes 150 GB of Diagnostic Laboratory Records*, BOTCRAWL (Dec. 2, 2025), https://botcrawl.com/precipio-data-breach/ (last visited Aug. 5, 2026).

[21] Gabby Lee, *INC Ransomware: Master of Double Extortion*, SECURITY DAILY REVIEW (June 10, 2025), https://dailysecurityreview.com/resources/threat-actors-resources/inc-ransomware-master-of-double-extortion/ (last visited Aug. 5, 2026).

[22] Jessa Mikka Convocar, *3 Reasons Why You Shouldn't Pay Ransomware Demands [Updated]*, INTELLIGENT TECHNICAL SOLUTIONS, https://www.itsasap.com/blog/reasons-not-pay-ransomware (last visited Aug. 5, 2026).

42. Precipio's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

43. Precipio knew or should have known that its electronic records would be targeted by cybercriminals.

## C. THE HEALTHCARE SECTOR IS PARTICULARLY SUSCEPTIBLE TO DATA BREACHES.

44. Precipio was on notice that the healthcare industry is a highly susceptible target for data breaches.

45. In August 2014, after a cyberattack on Community Health Systems, Inc., the Federal Bureau of Investigation ("FBI") warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)[.]"[23]

46. The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[24]

---

[23] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, REUTERS (Aug. 2014), https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820 (last visited Aug. 5, 2026).

[24] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, AMA (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals (last visited Aug. 5, 2026).

47. "In 2023, healthcare organizations experienced the most data breaches since 2009. A key motivator for hackers to breach healthcare institutions is financial gain. Stolen records can also be used to gain unauthorized access to medical data or obtain medication prescriptions."[25]

48. Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. "The average total cost to resolve an identity theft-related incident, according to the survey, came to about $20,000. More than half of the victims said they had to pay for the care they didn't receive out of their own pocket to restore coverage. Nearly half said they lost their health care coverage as a result of the incident, while nearly one-third said their insurance premiums went up after the event."[26]

49. Healthcare related breaches have continued to rapidly increase because electronic patient data is seen as a valuable asset. "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[27]

50. As an entity in the healthcare industry, Precipio knew, or should have known, the importance of safeguarding Private Information and of the foreseeable consequences if such data were to be disclosed. These consequences include the significant costs that would be imposed on

---

[25] Liudmyla Pryimenko, *The 7 Industries Most Vulnerable to Cyberattacks*, SYTECA (Mar. 25, 2024), https://www.syteca.com/en/blog/5-industries-most-risk-of-data-breaches (last visited Aug. 5, 2026).

[26] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010), https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last visited Aug. 5, 2026).

[27] Eyal Benishti, *How to Safeguard Hospital Data from Email Spoofing Attacks*, INSIDE DIGITAL HEALTH (Apr. 4, 2019), https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks (last visited Aug. 5, 2026).

Plaintiffs and Class Members as a result of a data breach. Precipio failed, however, to implement adequate cybersecurity measures to prevent the Data Breach from occurring.

**D. PRECIPIO FAILED TO COMPLY WITH HIPAA.**

51. Title II of HIPAA contains what are known as the Administration Simplification provisions. *See* 42 U.S.C. §§ 1301, *et seq*. These provisions require that HHS create rules to streamline the standards for handling PHI similar to the data Defendant left unguarded and vulnerable to attack. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

52. Precipio's Data Breach resulted from a combination of insufficiencies that indicate Precipio failed to comply with safeguards mandated by HIPAA regulations and industry standards.

53. First, it can be inferred from Precipio's Data Breach that Precipio either failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiffs' and Class Members' PHI.

54. Plaintiffs' and Class Members' Private Information compromised in the Data Breach included "protected health information" as defined by 45 CFR § 160.103.

55. 45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

56. 45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

57. Plaintiffs' and Class Members' Private Information included "unsecured protected health information" as defined by 45 CFR § 164.402.

58. Plaintiffs' and Class Members' unsecured PHI was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

59. Based upon Defendant's Notice Letters to Plaintiffs and Class Members, Precipio reasonably believes that Plaintiffs' and Class Members' unsecured PHI has been acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

60. Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

61. Precipio reasonably believes that Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

62. Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

63. Plaintiffs' and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

64. Precipio reasonably believes that Plaintiffs' and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

65. It is reasonable to infer that Plaintiffs' and Class Members' unsecured PHI that was

acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

66. It should be rebuttably presumed that unsecured PHI acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

67. After receiving notice that they were victims of the Data Breach (which required the filing of a data breach report in accordance with 45 CFR § 164.408(a)), it is reasonable for recipients of that notice, including Plaintiffs and Class Members in this case, to believe that future harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

68. In addition, Precipio's Data Breach could have been prevented if Precipio had implemented HIPAA mandated, industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its patients.

69. Precipio's security failures also include, but are not limited to:

a. Failing to maintain an adequate data security system to prevent data loss;

b. Failing to mitigate the risks of a data breach and loss of data;

c. Failing to ensure the confidentiality and integrity of electronic protected health information Precipio creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d. Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only

to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f. Failing to identify and respond to suspected or known security incidents;

g. Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i. Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j. Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce, in violation of 45 CFR 164.306(a)(4); and

k. Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

70. The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414 also required Precipio to provide notice of the Data Breach to each affected individual "without unreasonable delay and ***in no case later than 60 days following discovery of the breach.***" (Emphasis added). However, Precipio failed to provide timely notice of the Breach.

71. Because Precipio has failed to comply with HIPAA, while monetary relief may cure some of Plaintiffs' and Class Members' injuries, injunctive relief is also necessary to ensure Precipio's approach to information security is adequate and appropriate going forward. Precipio still maintains the PHI and other highly sensitive PII of its current and former patients, including Plaintiffs and Class Members. Without the supervision of the Court through injunctive relief, Plaintiffs' and Class Members' Private Information remains at risk of subsequent data breaches.

**E. PRECIPIO FAILED TO COMPLY WITH FTC GUIDELINES.**

72. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

73. In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[28] The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity

[28] *See Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (Oct. 2016), available at: https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Aug. 5, 2026).

indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

74. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

75. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45 *et seq*. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

76. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses like Precipio of failing to use reasonable measures to protect Private Information they collect and maintain from consumers. The FTC publications and orders described above also form part of the basis of Precipio's duty in this regard.

77. The FTC has also recognized that personal data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "[m]ost consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The

larger the data set, the greater potential for analysis and profit."[29]

78. As evidenced by the Data Breach, Precipio failed to properly implement basic data security practices. Precipio's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

79. Precipio was at all times fully aware of its obligation to protect the Private Information of its patients yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### F. PRECIPIO FAILED TO COMPLY WITH INDUSTRY STANDARDS.

80. As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

81. The Center for Internet Security's ("CIS") Critical Security Controls ("CSC") recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security,

[29] Pamela Jones Harbour, *Remarks Before FTC Exploring Privacy Roundtable* (Dec. 7, 2009), available at: https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf (last visited Aug. 5, 2026).

Incident Response Management, and Penetration Testing.[30]

82. The National Institute of Standards and Technology ("NIST") also recommends certain practices to safeguard systems, such as the following:

a. Control who logs on to your network and uses your computers and other devices.
b. Use security software to protect data.
c. Encrypt sensitive data, at rest and in transit.
d. Conduct regular backups of data.
e. Update security software regularly, automating those updates if possible.
f. Have formal policies for safely disposing of electronic files and old devices.
g. Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.

83. Further still, the United States Cybersecurity and Infrastructure Security Agency ("CISA") makes specific recommendations to organizations to guard against cybersecurity attacks, including (a) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (b) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that

[30] *See The 18 CIS Critical Security Controls*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/controls/cis-controls-list (last visited Aug. 5, 2026).

signatures in these tools are updated," and (c) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.[31]

84. Defendant also failed to implement industry-standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiffs' and Class Members' Private Information, resulting in the Data Breach.

### G. PRECIPIO BREACHED ITS DUTY TO SAFEGUARD PLAINTIFFS' AND CLASS MEMBERS' PRIVATE INFORMATION.

85. In addition to its obligations under federal and state laws, Precipio owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Precipio owed a duty to Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members.

86. Precipio breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer

---

[31] *See Shields Up: Guidance for Organizations*, CYBERSECURITY AND INFRASTRUCTURE SECURITY AGENCY, https://www.cisa.gov/shields-guidance-organizations (last visited Aug. 5, 2026).

systems and data. Precipio's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect patients' Private Information;

c. Failing to properly monitor its own data security systems for existing intrusions;

d. Failing to sufficiently train its employees regarding the proper handling of its patients Private Information;

e. Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

f. Failing to adhere to HIPAA and industry standards for cybersecurity as discussed above; and

g. Otherwise breaching its duties and obligations to protect Plaintiffs' and Class Members' Private Information.

87. Precipio negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

88. Had Precipio remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiffs' and Class Members' confidential Private Information.

89. Accordingly, Plaintiffs' and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of

future harm that includes, but is not limited to, fraud and identity theft. Plaintiffs and Class Members also lost the benefit of the bargain they made with Precipio.

### H. PLAINTIFFS AND CLASS MEMBERS ARE AT A SIGNIFICANTLY INCREASED AND SUBSTANTIAL RISK OF FRAUD AND IDENTITY THEFT AS A RESULT OF THE DATA BREACH.

90. The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiffs and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[32] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

91. Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

92. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a

[32] *See FTC Information Injury Workshop, BE and BCP Staff Perspective*, FEDERAL TRADE COMMISSION, (Oct. 2018), available at: https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited Aug. 5, 2026).

data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

93. In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

94. Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiffs' and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiffs and Class Members.

95. One such example of how malicious actors may compile Private Information is through the development of "Fullz" packages.

96. Cybercriminals can cross-reference two sources of the Private Information compromised in the Data Breach to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

97. The development of "Fullz" packages means that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs' and the proposed

Class's phone numbers, email addresses, and other sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card or financial account numbers may not be included in the Private Information stolen in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs and other Class Members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

98. For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[33] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

99. Identity thieves can also use stolen personal information such as Social Security numbers and PHI for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being

---

[33] *See IdentityTheft.gov*, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Steps.

issued in the victim's name.

100. The Identity Theft Resource Center documents the multitude of harms caused by fraudulent use of PII in its 2023 Consumer Impact Report.[34] After interviewing over 14,000 identity crime victims, researchers found that as a result of the criminal misuse of their PII:

- 77-percent experienced financial-related problems;
- 29-percent experienced financial losses exceeding $10,000;
- 40-percent were unable to pay bills;
- 28-percent were turned down for credit or loans;
- 37-percent became indebted;
- 87-percent experienced feelings of anxiety;
- 67-percent experienced difficulty sleeping; and
- 51-percent suffered from panic or anxiety attacks.[35]

101. PHI is also especially valuable to identity thieves. As the FTC recognizes, identity thieves can use PHI to commit an array of crimes, including identity theft and medical and financial fraud.[36]

102. Indeed, a robust cyber black market exists in which criminals openly post stolen PHI on multiple underground Internet websites, commonly referred to as the dark web.

103. While credit card information and associated PII can sell for as little as $1-$2 on the black market, protected health information can sell for as much as $363 according to the Infosec Institute.[37]

104. PHI is particularly valuable because criminals can use it to target victims with

---

[34] *2023 Consumer Impact Report* (Jan. 2024), IDENTITY THEFT RESOURCE CENTER, available at: https://www.idtheftcenter.org/wp-content/uploads/2023/08/ITRC_2023-Consumer-Impact-Report_Final-1.pdf (last visited Aug. 5, 2026).
[35] *Id.* at pp. 9, 21–25.
[36] *See* FEDERAL TRADE COMMISSION, *Warning Signs of Identity Theft*, https://consumer.ftc.gov/articles/what-know-about-identity-theft (last visited Aug. 5, 2026).
[37] *Data Breaches: In the Healthcare Sector*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited Aug. 5, 2026).

frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

105. Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[38]

106. The ramifications of Precipio's failure to keep its patients' Private Information secure are long-lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

107. Here, not only was sensitive medical information compromised, but Social Security numbers were compromised too. The value of both PII and PHI is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

108. It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or PHI is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study

---

[38] Michael Ollove, *The Rise of Medical Identity Theft in Healthcare*, KAISER HEALTH NEWS (Feb. 7, 2014), https://kffhealthnews.org/news/rise-of-indentity-theft/ (last visited Aug. 5, 2026).

regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm. [39]

109. PII and PHI are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

110. As a result, Plaintiffs and Class Members are at an increased risk of fraud and identity theft, including medical identity theft, for many years into the future. Thus, Plaintiffs and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

**I. PLAINTIFFS' AND CLASS MEMBERS' EXPERIENCES AND DAMAGES.**

***Plaintiff Ballard's Experience***

111. In order for Plaintiff Ballard to use Defendant's services, Defendant required that she provide it with substantial amounts of her Private Information, including her PHI.

112. On or about April 27, 2026, Plaintiff Ballard received a Notice Letter from Defendant, which informed her that her Private Information was compromised during the Data Breach. Specifically, the Notice Letter informed her that her name, Social Security number, date of birth, medical record number, patient account number, medical information, prescription information, health insurance information, address, telephone numbers, and email address were compromised.

---

[39] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (June 2007), available at: https://www.gao.gov/assets/gao-07-737.pdf (last visited Aug. 5, 2026).

113. The Notice Letter offered Plaintiff Ballard only one (1) year of credit monitoring services. However, one year of credit monitoring is not sufficient given that Plaintiff Ballard will now experience a lifetime of increased risk of identity theft, including but not limited to potential medical fraud.

114. Plaintiff Ballard suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring her accounts for fraud.

115. Plaintiff Ballard would not have provided her Private Information to Defendant had Defendant timely disclosed that its systems lacked adequate computer and data security practices to safeguard its patients' Private Information from theft, and that those systems were highly susceptible to a data breach.

116. Plaintiff Ballard suffered actual injury in the form of having her Private Information compromised and/or stolen as a result of the Data Breach.

117. Plaintiff Ballard suffered actual injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that Plaintiff Ballard entrusted to Defendant for the purpose of receiving healthcare services and which was compromised in, and as a result of, the Data Breach.

118. Plaintiff Ballard suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her Private Information being placed in the hands of criminals.

119. Shortly after the Data Breach, Plaintiff Ballard experienced a substantial increase in spam texts and spam calls to the same phone number that she provided to Defendant in connection with receiving Defendant's services. Following the Data Breach, Plaintiff Ballard

receives approximately 50 spam texts and calls per day, which causes her to spend multiple hours sorting through and deleting the spam every week. Due to the timing of the substantial increase in spam communications, Plaintiff Ballard believes this misuse of her Private Information is a direct result of the Data Breach.

120. Plaintiff Ballard has a continuing interest in ensuring that her Private Information, which remains in the possession of Defendant, is protected and safeguarded from future breaches. This interest is particularly acute, as Defendant's systems have already been shown to be highly susceptible to compromise and are subject to further attack so long as Precipio fails to undertake the necessary and appropriate security and training measures to protect its patients' Private Information.

121. As a result of the Data Breach, Plaintiff Ballard made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching the credit monitoring offered by Defendant. Plaintiff Ballard has spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities.

122. Plaintiff Ballard also suffered actual injury in the form of: (i) damage to and diminution in the value of her Private Information, a form of property that Defendant obtained from Plaintiff Ballard; (ii) violation of her privacy rights; and (iii) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud she now faces.

123. As a result of the Data Breach, Plaintiff Ballard anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

***Plaintiff McKinney's Experience***

124. In order for Plaintiff McKinney to use Defendant's services, Defendant required that she provide it with substantial amounts of her Private Information, including her PHI.

125. On or about April 23, 2026, Plaintiff McKinney received a Notice Letter from Defendant, which informed her that her Private Information was compromised in the Data Breach. Specifically, the Notice Letter informed her that her date of birth, medical record number(s), medical information, address information, telephone numbers, email address, and name were compromised.

126. Plaintiff McKinney suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring her accounts for fraud.

127. Plaintiff McKinney would not have provided her Private Information to Defendant had Defendant timely disclosed that its systems lacked adequate computer and data security practices to safeguard its patients' personal and health information from theft, and that those systems were highly susceptible to a data breach.

128. Plaintiff McKinney suffered actual injury in the form of having her Private Information compromised and/or stolen as a result of the Data Breach.

129. Plaintiff McKinney suffered actual injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that Plaintiff McKinney entrusted to Defendant for the purpose of receiving healthcare services from Defendant and which was compromised in, and as a result of, the Data Breach.

130. Plaintiff McKinney suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her Private Information being placed in the hands of criminals.

131. Plaintiff McKinney has a continuing interest in ensuring that her Private Information, which remains in the possession of Defendant, is protected and safeguarded from future breaches. This interest is particularly acute, as Defendant's systems have already been shown to be highly susceptible to compromise and are subject to further attack so long as Precipio fails to undertake the necessary and appropriate security and training measures to protect its patients' Private Information.

132. As a result of the Data Breach, Plaintiff McKinney made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching the credit monitoring offered by Defendant. Plaintiff McKinney has spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities.

133. Plaintiff McKinney also suffered actual injury in the form of: (i) damage to and diminution in the value of her Private Information, a form of property that Defendant obtained from Plaintiff McKinney; (ii) violation of her privacy rights; and (iii) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud she now faces.

134. As a result of the Data Breach, Plaintiff McKinney anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

***Classwide Damages***

135. In sum, Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

136. Plaintiffs and Class Members entrusted their Private Information to Defendant in

order to receive Defendant's services.

137. Their Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which resulted from Defendant's inadequate data security practices.

138. As a direct and proximate result of Precipio's actions and omissions, Plaintiffs and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having medical services billed in their names, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

139. Further, and as set forth above, as a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

140. Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

141. Plaintiffs and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiffs and Class Members.

142. The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed

mosaic of Plaintiffs and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiffs and Class Members.

143. Plaintiffs and Class Members also lost the benefit of the bargain they made with Precipio. Plaintiffs and Class Members overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price Plaintiffs and Class Members paid, directly or indirectly, to Precipio was intended to be used by Precipio to fund adequate security of Precipio's system and protect Plaintiffs' and Class Members' Private Information. Thus, Plaintiffs and the Class did not receive the benefit of the bargain.

144. Additionally, Plaintiffs and Class Members also suffered a loss of value of their PII and PHI when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[40] In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $60 a year.[41]

145. As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by

---

[40] *See How Data Brokers Profit from the Data We Create*, THE QUANTUM RECORD (Apr. 23, 2025), https://thequantumrecord.com/blog/data-brokers-profit-from-our-data/ (last visited Aug. 5, 2026).
[41] *Frequently Asked Questions,* NIELSEN COMPUTER & MOBILE PANEL, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited Aug. 5, 2026).

Plaintiffs and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiffs and the Class Members, thereby causing additional loss of value.

146. Finally, Plaintiffs and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

147. Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Precipio, is protected from future breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing highly sensitive personal and health information of its patients is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

148. As a direct and proximate result of Precipio's actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## V. CLASS ACTION ALLEGATIONS

149. Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

150. Specifically, Plaintiffs propose the following Class definition (the "Class"), subject to amendment as appropriate:

> **Class**
>
> All individuals in the United States whose Private Information was accessed and/or acquired in the Data Breach, including all individuals who were sent a Notice Letter.

151. Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal

representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

152. Plaintiffs reserve the right to modify or amend the definition of the Class, as well as add subclasses, if necessary, before the Court determines whether certification is appropriate.

153. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

154. Numerosity. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of thousands of patients of Precipio whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Precipio's records, Class Members' records, publication notice, self-identification, and other means.

155. Commonality. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Precipio engaged in the conduct alleged herein;

b. Whether Precipio's conduct violated the FTCA and HIPAA;

c. When Precipio learned of the Data Breach;

d. Whether Precipio's response to the Data Breach was adequate;

e. Whether Precipio unlawfully lost or disclosed Plaintiffs' and Class Members' Private Information;

f. Whether Precipio failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private

Information compromised in the Data Breach;

g. Whether Precipio's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h. Whether Precipio's data security systems prior to and during the Data Breach were consistent with industry standards;

i. Whether Precipio owed a duty to Class Members to safeguard their Private Information;

j. Whether Precipio breached its duty to Class Members to safeguard their Private Information;

k. Whether hackers obtained Class Members' Private Information via the Data Breach;

l. Whether Precipio had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class Members;

m. Whether Precipio breached its duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

n. Whether Precipio knew or should have known that its data security systems and monitoring processes were deficient;

o. What damages Plaintiffs and Class Members suffered as a result of Precipio's misconduct;

p. Whether Precipio's conduct was negligent;

q. Whether Precipio's conduct was *per se* negligent;

r. Whether Precipio was unjustly enriched;

s. Whether Plaintiffs and Class Members are entitled to additional credit or

identity monitoring and monetary relief; and

t. Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

156. Typicality. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Precipio. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of Class Members arise from the same operative facts and are based on the same legal theories.

157. Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' counsel are competent and experienced in litigating class actions, including data privacy litigation of this kind.

158. Predominance. Precipio has engaged in a common course of conduct toward Plaintiffs and Class Members in that all of Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Precipio's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

159. Superiority. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is

superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Precipio. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

160. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Precipio has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

161. Finally, all members of the proposed Class are readily ascertainable. Precipio has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Precipio.

## VI. CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

162. Plaintiffs restate and reallege the allegations stated in paragraphs 1–161 as if fully set forth herein.

163. Precipio knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost,

stolen, and misused by unauthorized parties.

164. Precipio's duty also included a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

165. Precipio knew or should have known of the risks inherent in collecting the Private Information of Plaintiffs and Class Members and the importance of adequate security. Precipio was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

166. Precipio owed a duty of care to Plaintiffs and Class Members whose Private Information was entrusted to it. Precipio's duties included, but were not limited to, the following:

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b. To protect patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class Members pursuant to HIPAA and the FTCA;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiffs and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

167. Precipio's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

168. Precipio's duty also arose because Defendant was bound by industry standards to protect its patients' confidential Private Information.

169. Plaintiffs and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Precipio owed them a duty of care to not subject them to an unreasonable risk of harm.

170. Precipio, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within Precipio's possession.

171. Precipio, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiffs and Class Members.

172. Precipio, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

173. Precipio breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of its networks and systems;

c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' Private Information;

e. Failing to comply with the FTCA;

f. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

174. Precipio acted with reckless disregard for the rights of Plaintiffs and Class Members by failing to provide prompt and adequate individual notice of the Data Breach such that Plaintiffs and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

175. Precipio had a special relationship with Plaintiffs and Class Members. Plaintiffs' and Class Members' willingness to entrust Precipio with their Private Information was predicated on the understanding that Precipio would take adequate security precautions. Moreover, only Precipio had the ability to protect its systems (and the Private Information that it stored on them) from attack.

176. Precipio's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information to be compromised and exfiltrated as alleged herein.

177. Precipio's breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

178. As a result of Precipio's negligence in breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members are in danger of imminent harm in that their Private

Information, which is still in the possession of third parties, will be used for fraudulent purposes.

179. Precipio also had independent duties under state laws that required it to reasonably safeguard Plaintiffs' and Class Members' Private Information and promptly notify them about the Data Breach.

180. As a direct and proximate result of Precipio's negligent conduct, Plaintiffs and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

181. The injury and harm that Plaintiffs and Class Members suffered was reasonably foreseeable.

182. Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

183. In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Precipio to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

184. Plaintiffs restate and reallege the allegations stated in paragraphs 1–161 as if fully set forth herein.

185. Pursuant to Section 5 of the FTCA, Precipio had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiffs and Class Members.

186. Pursuant to HIPAA, 42 U.S.C. § 1302(d), *et seq*., Precipio had a duty to implement reasonable safeguards to protect Plaintiffs' and Class Members' Private Information.

187. Specifically, pursuant to HIPAA, Defendant had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

188. Precipio breached its duties to Plaintiffs and Class Members under the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

189. Specifically, Precipio breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

190. The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII and PHI (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of Precipio's duty in this regard.

191. Precipio also violated the FTCA and HIPAA by failing to use reasonable measures to protect the Private Information of Plaintiffs and the Class and by not complying with applicable industry standards, as described herein.

192. It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiffs' and Class Members' Private Information in compliance with applicable laws would result in an

unauthorized third-party gaining access to Precipio's networks, databases, and computers that stored Plaintiffs' and Class Members' unencrypted Private Information.

193. Plaintiffs and Class Members are within the class of persons that the FTCA and HIPAA are intended to protect and Precipio's failure to comply with both constitutes negligence *per se*.

194. Plaintiffs' and Class Members' Private Information constitutes personal property that was stolen due to Precipio's negligence, resulting in harm, injury, and damages to Plaintiffs and Class Members.

195. As a direct and proximate result of Precipio's negligence *per se*, Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to damages from the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

196. As a direct and proximate result of Precipio's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

197. In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Precipio to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

## COUNT III
## BREACH OF IMPLIED CONTRACT
## (ON BEHALF OF PLAINTIFFS AND THE CLASS)

198. Plaintiffs restate and reallege the allegations stated in paragraphs 1–161 as if fully set forth herein.

199. Precipio provides healthcare related services to Plaintiffs and Class Members. Plaintiffs and Class Members formed an implied contract with Defendant regarding the provision of those services through their collective conduct, including by Plaintiffs and Class Members paying for services and/or entrusting their valuable Private Information to Defendant in exchange for such services.

200. Through Defendant's sale of services to Plaintiffs and Class Members, it knew or should have known that it must protect Plaintiffs' and Class Members' confidential Private Information in accordance with its policies, practices, and applicable law.

201. As consideration, Plaintiffs and Class Members paid money, directly or indirectly, to Precipio and/or turned over valuable Private Information to Precipio. Accordingly, Plaintiffs and Class Members bargained with Precipio to securely maintain and store their Private Information.

202. Precipio accepted payment and/or possession of Plaintiffs' and Class Members' Private Information for the purpose of providing services to Plaintiffs and Class Members.

203. In paying Defendant and/or providing their valuable Private Information to Defendant in exchange for Defendant's services, Plaintiffs and Class Members intended and understood that Precipio would adequately safeguard the Private Information as part of those services.

204. Defendant's implied promises to Plaintiffs and Class Members include, but are not limited to: (i) taking steps to ensure that anyone who is granted access to Private Information also protects the confidentiality of that data; (ii) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (iii) restricting access to qualified and trained employees and/or agents; (iv) designing

and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (v) applying or requiring proper encryption; (vi) implementing multifactor authentication for access; (vii) complying with HIPAA standards to make sure that Plaintiffs' and Class Members' PHI would remain protected; and (viii) taking other steps to protect against foreseeable data breaches.

205. Plaintiffs and Class Members would not have entrusted their Private Information to Precipio in the absence of such an implied contract.

206. Had Precipio disclosed to Plaintiffs and the Class that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiffs and Class Members would not have provided their Private Information to Precipio.

207. As a provider of healthcare, Precipio recognized (or should have recognized) that Plaintiffs' and Class Members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiffs and the other Class Members.

208. Precipio violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Private Information. Precipio further breached these implied contracts by failing to comply with its promise to abide by HIPAA.

209. Additionally, Precipio breached the implied contracts with Plaintiffs and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information it created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1).

210. Precipio also breached the implied contracts with Plaintiffs and Class Members by failing to implement technical policies and procedures for electronic systems that maintain

electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1).

211. Precipio further breached the implied contracts with Plaintiffs and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1).

212. Precipio further breached the implied contracts with Plaintiffs and Class Members by failing to identify and respond to suspected or known security incidents and to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii).

213. Precipio further breached the implied contracts with Plaintiffs and Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2).

214. Precipio further breached the implied contracts with Plaintiffs and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3).

215. Precipio further breached the implied contracts with Plaintiffs and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce violations, in violation of 45 CFR 164.306(a)(4).

216. Precipio further breached the implied contracts with Plaintiffs and Class Members by impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq*.

217. Precipio further breached the implied contracts with Plaintiffs and Class Members

by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard protected health information, in violation of 45 CFR 164.530(c).

218. Precipio further breached the implied contracts with Plaintiffs and Class Members by otherwise failing to safeguard Plaintiffs' and Class Members' PHI.

219. A meeting of the minds occurred, as Plaintiffs and Class Members agreed, *inter alia*, to provide payment and/or accurate and complete Private Information to Precipio in exchange for Precipio's agreement to, *inter alia*, provide services that included protection of their highly sensitive Private Information.

220. Plaintiffs and Class Members have been damaged by Precipio's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**COUNT IV**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

221. Plaintiffs restate and reallege the allegations stated in paragraphs 1–161 as if fully set forth herein.

222. This Count is pleaded in the alternative to Plaintiffs' Breach of Implied Contract claim.

223. Plaintiffs and Class Members conferred a benefit on Precipio by turning over their Private Information to Defendant and by paying for products and/or services that should have included cybersecurity protection to protect their Private Information. Plaintiffs and Class Members did not receive such protection.

224. Upon information and belief, Precipio funds its data security measures entirely from its general revenue, including payments made to it by Plaintiffs and Class Members.

225. As such, a portion of the payments made by Plaintiffs and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Precipio.

226. Precipio has retained the benefits of its unlawful conduct, including the amounts of payment received from Plaintiffs and Class Members that should have been used for adequate cybersecurity practices that it failed to provide.

227. Precipio knew that Plaintiffs and Class Members conferred a benefit upon it, which Precipio accepted. Precipio profited from these transactions and used the Private Information of Plaintiffs and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiffs' and Class Members' Private Information and prevented the Data Breach.

228. If Plaintiffs and Class Members had known that Precipio had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

229. Due to Precipio's conduct alleged herein, it would be unjust and inequitable under the circumstances for Precipio to be permitted to retain the benefit of its wrongful conduct.

230. As a direct and proximate result of Precipio's conduct, Plaintiffs and Class Members have suffered, and/or are at a continued, imminent risk of suffering, injury that includes but is not limited to the following: (i) the loss of the opportunity to control how their Private Information is used; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated

with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Precipio's possession and is subject to further unauthorized disclosures so long as Precipio fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

231. Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Precipio and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Precipio from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

232. Plaintiffs and Class Members may not have an adequate remedy at law against Precipio, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT V**
**BREACH OF FIDUCIARY DUTY**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

233. Plaintiffs restate and reallege the allegations stated in paragraphs 1–161 as if fully set forth herein.

234. In light of the special relationship between Precipio and its patients, whereby Precipio became a guardian of Plaintiffs' and Class Members' Private Information (including

highly sensitive, confidential, personal, and other PHI), Precipio was a fiduciary, created by its undertaking and guardianship of the Private Information, to act primarily for the benefit of its patients, including Plaintiffs and Class Members. This benefit included: (i) the safeguarding of Plaintiffs' and Class Members' Private Information; (ii) timely notifying Plaintiffs and Class Members of the Data Breach; and (iii) maintaining complete and accurate records of what and where Precipio's patients' Private Information was and is stored.

235. Precipio had a fiduciary duty to act for the benefit of Plaintiffs and the Class upon matters within the scope of its patients' relationship, in particular to keep the Private Information secure.

236. Precipio breached its fiduciary duties to Plaintiffs and the Class by failing to protect their Private Information.

237. Precipio breached its fiduciary duties to Plaintiffs and Class Members by failing to ensure the confidentiality and integrity of electronic PHI Precipio created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1).

238. Precipio breached its fiduciary duties to Plaintiffs and Class Members by failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1).

239. Precipio breached its fiduciary duties to Plaintiffs and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1).

240. Precipio breached its fiduciary duties to Plaintiffs and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable,

harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii).

241. Precipio breached its fiduciary duties to Plaintiffs and Class Members by failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 CFR 164.306(a)(2).

242. Precipio breached its fiduciary duties to Plaintiffs and Class Members by failing to protect against any reasonably-anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3).

243. Precipio breached its fiduciary duties to Plaintiffs and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce, in violation of 45 CFR 164.306(a)(4).

244. Precipio breached its fiduciary duties to Plaintiffs and Class Members by impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

245. As a direct and proximate result of Precipio's breaches of its fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer the harms and injuries alleged herein, as well as anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT VI**
**DECLARATORY JUDGMENT**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

246. Plaintiffs restate and reallege the allegations stated in paragraphs 1–161 as if fully set forth herein.

247. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal laws and regulations described in this Complaint.

248. Precipio owes a duty of care to Plaintiffs and Class Members, which required it to adequately secure Plaintiffs' and Class Members' Private Information.

249. Precipio still possesses Private Information regarding Plaintiffs and Class Members.

250. Plaintiffs allege that Precipio's data security measures remain inadequate. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their Private Information and the risk remains that further compromises of her Private Information will occur in the future.

251. Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Precipio owes a legal duty to secure its patients' Private Information and to timely notify customers of a data breach under the common law, HIPAA, and the FTCA;

b. Precipio's existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect patients' Private Information; and

c. Precipio continues to breach this legal duty by failing to employ reasonable measures to secure patients' Private Information.

252. This Court should also issue corresponding prospective injunctive relief requiring Precipio to employ adequate security protocols consistent with legal and industry standards to

protect patients' Private Information, including the following:

a. Order Precipio to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

b. Order that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, Precipio must implement and maintain reasonable security measures, including, but not limited to:

i. engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Precipio's systems on a periodic basis, and ordering Precipio to promptly correct any problems or issues detected by such third-party security auditors;

ii. engaging third-party security auditors and internal personnel to run automated security monitoring;

iii. auditing, testing, and training its security personnel regarding any new or modified procedures;

iv. segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Precipio's systems;

v. conducting regular database scanning and security checks;

vi. routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

vii. meaningfully educating its patients about the threats they face with regard

to the security of their Private Information, as well as the steps they should take to protect themselves.

253. If an injunction is not issued, Plaintiffs will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at Precipio. The risk of another such breach is real, immediate, and substantial. If another breach at Precipio occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

254. The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Precipio if an injunction is issued. Plaintiffs will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Precipio's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Precipio has a pre-existing legal obligation to employ such measures.

255. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Precipio, thus preventing future injury to Plaintiffs and other patients whose Private Information would be further compromised.

## VII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described above, seek the following relief:

a. An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Class requested herein;

b. Judgment in favor of Plaintiffs and Class Members awarding them appropriate

monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Precipio to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e. An order requiring Precipio to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiffs and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

DATED: August 10, 2026

Respectfully submitted,

*/s/: Oren Faircloth*
Oren Faircloth (Bar No. 438105)
**SIRI & GLIMSTAD LLP**
100 Pearl Street
14th Floor - #16946876
Hartford, CT 06103
Tel: (929) 677-5181
E: ofaircloth@sirillp.com

***Local Counsel***

*/s/: Leanna A. Loginov*
Leanna A. Loginov
(admitted *pro hac vice*)
**SHAMIS & GENTILE, P.A.**

14 NE First Avenue, Suite 705
Miami, Florida 33132
Tel: 917-628-5842
E: lloginov@shamisgentile.com

*/s/: Nicholas A. Migliaccio*
Nicholas A. Migliaccio
(admitted *pro hac vice*)
**MIGLIACCIO & RATHOD LLP**
412 H Street NE
Washington, DC 20002
Tel: (202) 470-3520
Email: nmigliaccio@classlawdc.com

***Interim Class Counsel***

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing was served on all counsel of record via CM/ECF.

Date: August 10, 2026

*/s/: Oren Faircloth*
Oren Faircloth (Bar No. 438105)
**SIRI & GLIMSTAD LLP**